IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN R. STEPHENSON          )
        Plaintiff,          )
                            )
    v.                      )  Civil Action No. 04-1436
                            )
J,S.P. INTERNATIONAL,       )
        Defendant.          )

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.

        This is an action in employment discrimination.  Plaintiff,

John R. Stephenson, alleges that defendant, J.S.P. International,

discriminated and retaliated against him due to his age in

violation of Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621, et. seq., and the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. 951, et. seq.[1] Plaintiff seeks an award of back

pay, front pay, compensation for lost fringe benefits, liquidated

damages and reasonable costs and attorney's fees.  Defendant has

filed a motion for summary judgment arguing that there are no

genuine issues of material fact and that it is entitled to

judgment as a matter of law.

        For the reasons set forth below, the motion will be

granted.

---

        [1]     Claims under the PHRA are interpreted under the
                same standards as Title VII claims.  Kelly v.
                Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

**DRAFT**

I.   BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed.

JSP manufactures engineering plastic foams for automobile components at its Butler, Pennsylvania plant. Plaintiff John R. Stephenson began working for defendant JSP International LLC ("JSP") on May 31, 1997. Plaintiff was 51 years old when he was hired.

Plaintiff's first job with defendant was as a material handler in the Extrusion Department. From 1997 through 2002, plaintiff received annual wage increases and was rated as either "average" or "good" on his annual performance reviews. Plaintiff received one "discipline" during this period. On January 5, 2000, plaintiff was disciplined for failing to report to work on a mandatory work day.

In 2002, defendant reorganized its Butler Plant to "meet its business needs for human resource flexibility and more efficient production." This reorganization included eliminating the material handler position in the Extrusion Department and cross-training all employees in that department for the positions of operator or lead operator. Plaintiff concedes that he was aware of the cross-training. Plaintiff alleges, however, that he was never informed of the reasons why cross-training was needed

2

**DRAFT**

or that his position was being eliminated. Plaintiff did receive his annual performance review on March 28, 2003 and discussed it with his supervisor. The first goal listed in this review for the upcoming performance year was to:

> "Work with and receive training from the Leads/Operators on your team to become qualified as an Op/QC Technician. Training should begin immediately. Reclassification of Material Handler to take place based on qualifications, no later than June of 2003."

Six months later, on October 24, 2003, in his follow up review, plaintiff's supervisor again noted the need to focus on cross-training.

The cross-training process worked as follows: (1) the employee would be trained, (2) the employee would sign off on the procedures for which he or she had been trained indicating that he or she understood the tasks and had received the training; and (3) the employee would then be available to do the new job.

Defendant alleges plaintiff attended training meetings to review departmental work instructions but refused to sign documents indicating he had been trained and would be accountable for departmental procedures.

Plaintiff admits that he signed some documents and not others. Although it is unclear from the record why plaintiff refused to sign some documents, it is evident that this became a

3

point of contention between plaintiff and his supervisors. When defendant approached plaintiff on March 22, 2004 to discuss his failure to sign the training paperwork, plaintiff indicated that he had bid into the material handler department so that he would not be required to do any other jobs.

On March 25, 2004, plaintiff met with the Regional Manager of Human Resources, Daniel Resetarits, Human Resources Generalist, Victoria Senko, the department manager, Ed Wall and plaintiff's supervisor, Bryan Cress. Plaintiff was informed that he needed to sign the training paperwork and be held accountable for his job duties in the Extrusion Department. Plaintiff was further told that if he didn't sign the paperwork, he would be fired. Plaintiff claims that Resetarits told him that "the next time he saw him, he would be going out that door."

After this meeting, plaintiff trained with co-worker Rob Gourley for three days on the extruder computer. Plaintiff was trained how to analyze micro pellets and put them in the computer. Plaintiff admits that he refused to sign some paperwork. Although plaintiff does not recall which paperwork he refused to sign, defendant states that plaintiff refused to sign the paperwork regarding the quality control function for which he had been trained.

4

**DRAFT**

Defendant held yet another meeting with plaintiff, Resetarits, Senko and Cress on April 4, 2004. Resetarits informed plaintiff that if he wished to remain employed at the company, he must be able to do the extruder operator job, which required him to sign the paperwork indicating that he understood the tasks and received training. Resetarits further informed plaintiff that his refusal to sign paperwork at the completion of training demonstrated his lack of interest in working at the company. At the end of the meeting, plaintiff was informed that if he did not sign the paperwork, he would be terminated. Plaintiff has admitted that he was not interested in the operator position. As of April 29, 2004, plaintiff had still not signed three departmental procedures.

On April 8, 2004 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against defendant because he had been "threatened" by Resetarits. This charge was also filed with the Pennsylvania Human Relations Commission. Plaintiff further contended that he suffered age discrimination because Russ Collins, a supervisor, was "making it rough" for him in the extrusion department and kept saying he could do plaintiff's job faster. Plaintiff did not complain about age discrimination, or about any of these events, to his

**DRAFT**

supervisor or to anyone else at the company prior to filing his charge of discrimination.

Plaintiff testified that "younger" people at the company were being left alone, but did not know the age of these younger people. According to plaintiff, training on the extruders was something employees did "on their own." Plaintiff trained with two lead operators, Steve Harrison and Ryan Meier, "somewhat." Plaintiff testified that younger employees sought training by lead operators and became operators in the extruder department. Plaintiff does not know whether these employees signed the training paperwork.

On May 27, 2004, defendant faced a decrease in production that forced it to reduce the production schedule from seven days a week to five days a week. Because of the reduction, defendant was required to lay off some employees and did so based on employee skills. Plaintiff was selected for layoff in the Extrusion Department based on plaintiff's lack of compliance with the cross-training requirements. Dennis Fleeger, who was 49 years old at the time, was the only other material handler left in the department and was also selected for layoff.[2]

---

    [2]      Plaintiff initially admitted in his deposition that both he and Mr. Fleeger were laid off at the same time. See Plaintiff's Deposition at p. 48. He later stated that he believed Mr. Fleeger was
(continued...)

6

**DRAFT**

In response to the layoff, plaintiff filed another charge of discrimination with the EEOC and the PHRC on June 9, 2004. Plaintiff claimed that he had not been provided with computer training, that younger people were being offered training and that his layoff was in retaliation for his first charge of discrimination against defendant. Plaintiff also alleged that he was denied a position for which he was qualified in the containment department.

Plaintiff was recalled to return to work on August 8, 2004 in a temporary position in the Logistics Department. The Logistics Department manager, Mary Lou Bresnehan, brought plaintiff back on a temporary basis due to a "spike" in business. Although he had different supervisors in this department, plaintiff alleges that the harassment continued during this time.

Plaintiff was disciplined on September 30, 2004 for punching out and leaving "on the clock" without discussing transitions with the employees on the next shift. Plaintiff denies only that another employee complained about him, because

---

[2](...continued)
transferred. See Plaintiff's Deposition at p. 203. Defendant provided an affidavit from its Regional Director of Human Resources, Mr. Resetarits, stating that Mr. Fleeger was also laid off at that time. See Declaration of D.Resetarits, p. 5-6.

7

**DRAFT**

he confronted the employee about the allegations and the employee denied that he had complained.

Plaintiff was again disciplined in the Logistics Department on November 24, 2005 for violating the company's vacation policies. Plaintiff alleges that his vacation was initially approved and he received this discipline in retaliation for filing discrimination charges against the company. Defendant alleges that plaintiff was warned that he needed to clear his vacation schedule with his new supervisor and failed to do so. There is no evidence that his new supervisor, Mary Lou Bresnehan, was aware of his prior charges of discrimination.

When plaintiff's temporary position ended in March 2005, he was reassigned to be a press operator in the Molding Department instead of returning to layoff. Plaintiff received training on operating the presses on March 31, 2005, consisting of viewing slides and 10-15 minutes of hands on training. Plaintiff contends that this training wasn't "adequate."

On April 14, 2005, plaintiff was disciplined, this time in the Molding Department. He was disciplined for mistakes in his paperwork. Plaintiff admits that he did not know the paperwork and signed the discipline.

On May 16, 2005, plaintiff was disciplined again for failing to cover a required overtime assignment pursuant to

company policy. Plaintiff refused to sign that discipline because he claims he was not told he had to cover that shift.

One week later, on May 23, 2005, plaintiff was again disciplined for failing to cover a required overtime assignment. At this time, Ms. Senko and Mr. Shade informed plaintiff that one more attendance or performance violation would result in termination. This warning was written on the employee report which plaintiff refused to sign.

According to defendant, the final violation occurred on May 25, 2005. Plaintiff was working the press in the Molding Department when he failed to place the required inserts in the molded component. Plaintiff claims he did insert them. Defendant terminated him for this final violation. Plaintiff alleges that "to his knowledge," Krista Davis, a younger temporary employee responsible for verifying that the inserts were properly placed in the molding, was not questioned or disciplined over the incident. Defendant provided an affidavit from the Regional Director for Human Resources stating that Ms. Davis was also terminated for her failure to detect the parts plaintiff failed to insert.

On May 27, 2005, the date of his termination, plaintiff filed another EEOC charge based on his belief that he was terminated due to age discrimination and retaliation. In this

charge plaintiff claims that all the discipline he received while working at the company was discriminatory, harassment or retaliatory.

## II. STANDARD OF REVIEW

The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if it might affect the outcome of the case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes concerning issues that are irrelevant to the outcome of the case are, therefore, not considered. Id. Factual disputes must also be "genuine" in that the evidence presented must be such "that a reasonable jury could return a verdict for the nonmoving party." Id.

A nonmoving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Rather, the non-moving party must offer specific evidence found in the record that

10

contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial.   See id. If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment.   Fed. R. Civ. P. 56(e).

It is on this standard that we now turn to the merits of defendant's motion.

III.  DISCUSSION

Defendant has moved for summary judgment on the basis that plaintiff has failed to adduce evidence sufficient to meet all the elements required to establish a prima facie case of age discrimination or retaliation. Additionally, defendant argues that it is entitled to summary judgment on the basis that it has offered legitimate business reasons for all its actions with regards to plaintiff. Defendant asserts that, even if plaintiff did meet his prima facie case, he cannot point to any evidence of pretext to cast doubt upon the business reasons proffered by defendant.

Plaintiff argues that he has established a prima facie case of age discrimination and retaliation.  Plaintiff further asserts that he has produced sufficient evidence of record to establish a genuine issue of material fact on the issue of pretext.

11

The court finds that plaintiff has failed to meet his burden of establishing a prima facie case of discrimination or retaliation and has not cast doubt upon defendant's business reasons. Defendant's motion will be granted.

A.   Age Discrimination

Plaintiff has alleged that four separate incidents indicate that defendant discriminated on the basis of age. Plaintiff also alleges that two of these events show retaliation. We will address each of these assertions in turn.

In the absence of direct evidence, plaintiff may establish a prima facie case of age discrimination by proving by a preponderance of the evidence that (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the employer treated similarly situated, younger employees more favorably . See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff satisfies each element of a prima facie case and defendant fails to refute any element, the court will presume that defendant acted with a discriminatory animus.

Once plaintiff establishes the prima facie case, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981).   If

12

defendant articulates, through admissible evidence, a legitimate non-discriminatory reason for the action, any presumption of discrimination drops from the case. Thus, rather than attempting to prove an affirmative defense, defendant supplies an explanation. Once defendant has supplied such an explanation, plaintiff no longer enjoys the presumption created by a prima facie case, but must satisfy the ultimate burden of proving discrimination. Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

Although the presumption of discrimination has dropped from the case, that does not mean that plaintiff must produce additional evidence of discriminatory animus in order to withstand a motion for summary judgment. Plaintiff may instead point to evidence of record which creates a genuine issue of whether defendant's proffered reason is worthy of belief. "The factfinder's disbelief of the reasons put forth by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Saint Mary's Honor Ctr., 509 U.S. at 511.

Nevertheless, to defeat a motion for summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the

13

plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action; or (2) disbelieve the employer's articulated legitimate reasons. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To make the latter showing, plaintiff must produce some evidence from which a reasonable factfinder could conclude that each of the defendant's proffered reasons is "unworthy of credence."   Id. at 765.    This may be accomplished by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons."   Id.

Where plaintiff asserts that defendant's proffered reasons are not worthy of belief, the court "must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible."   Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1072 (3d Cir. 1996).   If the court is not satisfied that the evidence meets this threshold requirement, summary judgment for defendant is appropriate.   Fuentes, 32 F.3d at 762.

1.   Cross-training

14

Plaintiff alleges that defendant unlawfully discriminated against him because of his age in connection with the departmental cross-training. First, plaintiff contends he was not provided the training necessary to become an extruder operator, although younger employees were offered such training. Secondly, plaintiff alleges defendant attempted to force plaintiff to sign forms stating that he had received training that he had not received, threatening him with termination if he did not sign the forms. Defendant disputes these contentions but primarily argues it is entitled to summary judgment because plaintiff cannot establish the fourth element of his prima facie case. Significantly, plaintiff cannot show that other younger employees were treated more favorably.

In order to establish a prima facie case, plaintiff must present "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 356 (3d. Cir. 1999). According to plaintiff's deposition testimony, cross-training for the operator position consisted of computer training and hands-on extruder training with the lead operators. Plaintiff testified that he was trained for three days on the computer in the Extruder Department. Plaintiff further testified that employees who trained to become operators did so

15

on their own. When asked whether he approached lead operators to be taught how to run the extruders, plaintiff responded that he worked with two lead operators, Steve Harrison and Ryan Meier, "somewhat." The record shows that plaintiff was advised in meetings with his supervisors and in his performance evaluations that he was expected to work with lead operators for extruder training. Plaintiff also testified that he was not interested in the extruder position.

In essence, plaintiff is really arguing that younger employees successfully became operators after training with lead operators. This, however, only shows that other employees completed the training that was required of them; training that was to be done, according to plaintiff, "on their own." There is simply no evidence to support any inference of discrimination in plaintiff's "lack of training" claim. As such, defendant is entitled to summary judgment on the first part of plaintiff's cross-training claim.

We now turn to the second part of plaintiff's cross-training claim. Plaintiff asserts that defendant tried to force him to sign for training that he did not receive. However, plaintiff does not point to any record evidence that supports this allegation. We again note that a nonmoving party may not successfully oppose a summary judgment motion by resting upon

16

mere allegations or denials. Lujan v. National Wildlife Fed'n, 497 U.S. 888. Although plaintiff testified that he signed for some procedures and not others, he could not recall which he signed and which ones he refused to sign. When asked if he attended training meetings and then refused to sign paperwork to that effect, plaintiff again replied that he could not remember. Finally, when asked whether the charge of discrimination that he filed during this time period was in connection with defendant's request and requirement that he sign off on training procedures, plaintiff responded "No, not really."

Because the record is devoid of any indication that defendant tried to force plaintiff to sign off on training that he did not receive, plaintiff has not satisfied his prima facie burden on this second part of his cross-training claim. Plaintiff's faulty memory cannot create an issue of material fact in this respect. Defendant is therefore entitled to summary judgment on this second part of plaintiff's cross-training claim.

2. Plaintiff's May 2004 Layoff

Defendant claims that it is entitled to summary judgment on plaintiff's age discrimination claim with regards to the May 2004 layoff because plaintiff cannot prove the fourth element of his prima facie case, that similarly situated younger employees were treated more favorably.

17

Plaintiff first identifies Dennis Fleeger, who was 49 years old at the time, as a person who was not subject to the May 2004 layoff, and thus, treated more favorably. Contrary to his assertions, plaintiff testified in his deposition that both he and Mr. Fleeger were laid off on May 24, 2005. Plaintiff further asserted that at the time, he and Mr. Fleeger were the only two material handlers left, although Mr. Fleeger had bid to become an operator. Although plaintiff later changed his testimony to say that he believed Mr. Fleeger was transferred, not laid off, Plaintiff cannot create an issue of material fact by relying on his own contradictions. Further, defendant has provided an affidavit stating that Mr. Fleeger was also laid off at that time. Because we find that Mr. Fleeger was laid off on May 2004, he is clearly not someone who was treated more favorably.

Plaintiff then reverts to his "lack of training" argument to try to establish the fourth element of his prima facie case. Plaintiff alleges that Jeremy Nolder and Shaun Smith were younger material handlers who avoided being laid off by becoming operators after receiving training to operate extruders. As discussed in the previous section, plaintiff cannot point to any training that younger employees were offered and that he was denied. As such, this argument has no merit.

18

Finally, plaintiff alleges that at the time he was laid off, there were positions available in the containment department for which he was qualified. Plaintiff also alleges that Mr. Rekish, a younger employee, was laid off at approximately the same time as plaintiff but was recalled to a containment area vacancy within a few weeks. Plaintiff has provided no evidence to support this claim. At the summary judgment stage, plaintiff cannot rely merely on his own allegations.

Plaintiff testified at his deposition that there was a position open in containment, but provided no documentary evidence or witness testimony to corroborate this. Plaintiff testified that Mr. Rekish was laid off around the same time and that he was recalled to containment. Again, plaintiff provided no corroboration of this fact, other than his own deposition. Finally, plaintiff admitted that he did not bid into the containment position.

Even assuming that plaintiff had proven his prima facie case, defendant has provided a legitimate business reason for laying plaintiff off in May 2004. Defendant changed its seven day production schedule to a five day production schedule and needed to reduce its personnel accordingly. Plaintiff was chosen for lay off due to his skill set. Defendant contends that plaintiff's failure to sign paperwork evidencing that he had been

19

cross-trained made him less qualified than employees who were not
laid off.

At this point, the burden would now shift back to
plaintiff to point to some evidence from which a fact-finder
could reasonably either (1) disbelieve the employer's articulated
legitimate reasons or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action. This plaintiff
fails to do. Plaintiff admits that his skill set was inadequate,
but claims that this was because he was not offered much of the
training that was given to younger employees. Again, because
plaintiff cannot point to a single "training" that he was denied,
this does not cast doubt on defendant's proffered reason.

Plaintiff again argues that Mr. Fleeger, the other
material handler, was also treated better than he was because he
was not laid off, but transferred. This argument contradicts
plaintiff's own testimony. Accordingly, this claim is rejected.

Finally, plaintiff alleges that Mr. Reseterits,
defendant's regional director of human resources, stated that it
is company policy to transfer employees who would otherwise be
laid off to vacant positions. The citation of record plaintiff
provided does not support this contention. Plaintiff's bare

20

assertion that there was an open position for which he was qualified is not evidence.

Accordingly, defendant is granted summary judgment on this claim.

3.   Transfer to the Molding Department

Plaintiff initially alleged that his transfer from a temporary position in the logistics department to the molding department in March 2004 was also due to age discrimination. Plaintiff has now withdrawn this claim.

4.   Plaintiff's May 27, 2005 Termination

Plaintiff's final age discrimination claim arises from his 2005 termination. Plaintiff claims that age discrimination was the real reason for his termination because he did not commit the infraction of which he was accused. Defendant argues that plaintiff cannot prove the fourth element of his prima facie case, namely that a similarly situated younger employee was not disciplined or terminated for the same infraction.

Plaintiff argues that he has proven a prima facie case because "to his knowledge," Krista Davis, a younger employee, was not even questioned or disciplined over the incident although it was her job to inspect the molding components before sending them to the Containment Department.

21

According to defendant, plaintiff was terminated for failing to place plastic inserts into the molded component. This resulted in plaintiff's discharge because plaintiff's prior performance problems had resulted in a May 23, 2005 written warning that "Any further performance or attendance issues will result in immediate termination." Defendant has also provided affidavits along with documentary evidence showing that younger employees in that department were also disciplined for various reasons, including instances of employees failing to insert the proper parts into components. Finally, defendant has provided an affidavit by Daniel Resetarits, the company's regional director of human resources, stating that the company did in fact terminate Ms. Davis for the same incident.

In response, plaintiff alleges that defendant has not provided any documentary evidence that Ms. Davis was in fact terminated and argues that he did place those inserts in the component. This attempt to place the burden on defendant fails because Federal Rule of Civil Procedure 56(c) provides that when a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of their pleadings but must set forth specific facts showing a genuine issue for trial by affidavits or as otherwise provided by this rule. Plaintiff's attempt to prove

22

his prima facie case by relying on his statement that "to his knowledge" Ms. Davis was not disciplined over the same incident is simply not enough to satisfy his prima facie burden.

Even if plaintiff had set forth his prima facie case, plaintiff still fails to rebut defendant's proferred reason for terminating him. As previously set forth, because defendant has articulated a legitimate non-discriminatory reason for plaintiff's discharge, plaintiff must "produc[e] evidence from which a fact finder could reasonably either disbelieve the employer's articulated reasons or believe that a discriminatory reason was more likely than not a cause of employer's action." Plaintiff at this point cannot cast doubt on defendant's reasoning by shifting the burden to the defendant to affirmatively prove Ms. Davis was fired or by simply denying that the incident occurred. The disciplinary documentation, along with depositions and affidavits, show that defendant believed that plaintiff had committed yet another performance infraction. Plaintiff has not cast doubt on this valid reason. As such, summary judgment must be granted to defendant on this claim.

B.  Retaliation

Plaintiff contends that defendant's actions amounted to a retaliatory lay off and discharge. In order to recover on his retaliatory lay off and discharge claims, plaintiff must show,

23

(1) he engaged in a protected activity; (2) he was [laid off and] discharged after or contemporaneous with the activity; and (3) a causal link existed between the protected activity and the loss of his job. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

If a retaliatory lay off/discharge plaintiff makes a prima facie showing of all three factors, then the burden "shifts to the defendant 'to articulate a legitimate, nondiscriminatory reason for its conduct.'" Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citation omitted)

While the Court of Appeals for the Third Circuit held there that the "timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives," Jalil, 873 F.2d at 709, it stopped short of creating an inference based upon timing alone. See also Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991).

Contrary to Plaintiff's assertions, the law is clear that temporal proximity *alone* is not enough to establish a causal link between the protected activity and an adverse employment action. Rather, plaintiff needs to show additional evidence, such as discriminatory animus, in order for the court to be able to infer discrimination. Weston v. Commonwealth of Pennsylvania, 251

F.3d 421, 432 (3d. Cir. 2001). With these principles in mind, we turn to each of plaintiff's claims of retaliation.

1.   2004 Layoff

Plaintiff filed an EEOC charge of discrimination in April 8, 2004 alleging that he was being harassed because of his age. Plaintiff testified that his supervisors were threatening to fire him if he did not complete his cross-training and sign paperwork stating that he had completed such training. Although his charge did not mention any people in particular, plaintiff testified that Mr. Collins made comments to plaintiff stating that "he could do his job faster." Plaintiff never made any internal complaints about this or any other harassing comments. Plaintiff was laid off on May 27, 2004.

Although timing alone does not prove a causal connection, the fact that plaintiff was laid off one month and a half after his EEOC charge, coupled with comments that plaintiff was too slow, meets plaintiffs burden for a prima facie case at the summary judgment stage. The burden now shifts to defendant to provide non-discriminatory reasons for the layoff.

Defendant responds that a production decrease forced defendant to reduce its schedule from a seven day production to a five day production schedule. Plaintiff was selected for lay off due to his "skill sets," meaning he was not appropriately

trained to be an operator and refused to sign off on procedures that he had been trained for.

Plaintiff must now either produce additional evidence of discriminatory animus or point to evidence of record which creates a genuine issue of whether defendant's proffered reason is worthy of belief. This he cannot do. Plaintiff admits that he had a "diminished skill set." Plaintiff also admits that the company reduced its schedule and that personnel lay offs were needed. However, plaintiff claims that it is defendant's fault that he was not qualified for the operator position. He also claims that the other younger material handler, Mr. Fleeger, was not laid off but transferred to another department. The record does not support these allegations.

The record shows that plaintiff was instructed that he needed to cross-train, that he was told to work with operators to train, and that his supervisors were concerned because he refused to sign for procedures for which he had been trained. Plaintiff also testified that he was in fact trained for the quality control function in the extruder department and that it was his responsibility to get trained by lead operators. Finally, the record establishes that Mr. Fleeger, the only other material handler, was also laid off at the same time. Plaintiff has not shown pretext, but rather has admitted that the reasons that

26

defendant offers were true reasons. Defendant's motion for summary judgment must be granted as to the retaliation claim for the 2004 layoff.

### 2. Plaintiff's termination

In his final claim, plaintiff alleges that his termination was due to his filing charges of age discrimination with the EEOC. Plaintiff argues that this must be the case because he did not commit the infraction that was attributed to him. Although plaintiff has shown that he engaged in protected activity and was later discharged, plaintiff must also show that a causal link existed between the protected activity and the loss of his job. Jalil, 873 F.2d 708.

Plaintiff's arguments in this respect are that 1) he did not commit the infraction, or alternatively that he was set up to fail and 2) that a younger employee was not disciplined for the same incident. Plaintiff strenuously argues that defendant has not met its burden of proving that he did commit the infraction or that Ms. Davis, the younger employee, was in fact terminated for the incident. This argument misses the point. It is plaintiff's burden to establish a prima facie case of discrimination. Plaintiff simply cannot establish a causal link between his filing charges of discrimination and his termination by placing the burden on defendant.

27

Even if plaintiff had established a prima facie case, defendant states that plaintiff was terminated due to his failure to perform his job by not placing inserts in the molded component. Plaintiff's previous disciplinary infractions had placed him on a situation where a final infraction would cause his discharge. This final performance problem caused plaintiff's termination. Defendant supports these arguments by affidavits and plaintiff's employee records.

Focusing upon plaintiff's evidence to rebut defendant's offer of a legitimate, nondiscriminatory reason for discharging him, the court finds that no trier of fact could reasonably find from the record presented that defendant's avowed reasons for terminating plaintiff were pretextual. See Section A.2., infra. Plaintiff has simply failed to provide any evidence that would enable a trier of fact to determine that age was a determinative factor in defendant's decision. Accordingly, defendant's motion for summary judgment should be granted.

IV. Conclusion

Defendant's motion for summary judgment will be granted. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
JOHN STEPHENSON                    )
           Plaintiff,              )
                                   )
      v.                           )  Civil Action No. 04-1436
                                   )
J.S.P. INTERNATIONAL               )
           Defendant.              )
```

O R D E R

Therefore, this 6th day of December, 2006, IT IS

HEREBY ORDERED that Defendant's Motion for Summary Judgment

[document #25] is GRANTED.

BY THE COURT:

_____ J.

cc:   All Counsel of Record

29